IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**KHAVARIS HILL**                                                                             **PLAINTIFF**

**V.**                                                **CAUSE NO. 3:12-CV-880-CWR-FKB**

**HINDS COUNTY, MISSISSIPPI;**                                      **DEFENDANTS**
**SHERIFF TYRONE LEWIS, in his official**
**capacity; DEPUTY BRACEY COLEMAN,**
**in his official and individual capacities;**
**DEPUTY OGDEN WILBURN, in his**
**official and individual capacities; and**
**OTHER UNKNOWN JOHN AND JANE**
**DOES 1-10, also in their official and**
**individual capacities.**

## ORDER

Before the Court is the defendants' motion for summary judgment. The matter is fully briefed and ready for review. After considering the arguments, evidence, and applicable law, the motion will be granted in part.

**I.**     **Factual and Procedural History**

On January 1, 2012, Khavaris Hill was driving in Jackson, Mississippi, when he noticed that he was being followed by an unmarked black SUV. He sped up and the SUV followed. The SUV put on blue flashing lights, and then sirens, but Hill did not stop. He says he was robbed at gunpoint in 2009 by criminals who flashed blue lights as if they were law enforcement officers, and feared falling victim to this ruse again.[1]

This time, though, the SUV truly was an unmarked law enforcement vehicle. Hinds County Sheriff's Deputies Ogden Wilburn and Bracey Coleman were attempting to stop Hill for

---

[1] Perhaps for this reason, Mississippi law recognizes that persons charged with failing to stop their vehicle pursuant to the signal of a law enforcement officer may seek to defend themselves by proving that "the law enforcement officer was not in uniform or that no law enforcement vehicle used in the attempted stop was clearly marked as a law enforcement vehicle." Miss. Code Ann. § 97-9-72(5)(a).

alleged erratic driving. The pursuit continued for a few minutes on Interstate 220, with speeds reaching 80 miles an hour, Hill says. The vehicles then exited the Interstate. Hill claims the sheriff's deputies remained behind him, while the deputies say that they discontinued pursuit, fell back, and drove in the direction Hill had traveled.

At this point, Hill's vehicle – now traveling at least 70 miles an hour on surface streets, he testified – veered into oncoming traffic and hit a minivan head-on. The parties dispute whether the deputies' SUV hit Hill's car from behind, causing the head-on collision, or instead whether Hill swerved into the other lane himself. Hill's testimony on this point is conflicting.[2] Hill was momentarily knocked out.

The deputies say they came across the accident and Hill's smoking vehicle. They claim that they ordered Hill out of his vehicle, and when he did not comply, removed him from it, placed him in handcuffs, and called for an ambulance. Hill responds that he was complaining about neck injuries and should not have been pulled out. He also says the deputies searched his pockets, while the deputies say they conducted a pat-down search.

Hill was taken to the hospital and not arrested; no charges resulted from the evening's events.[3] He claimed injuries to his neck stemming from the accident.

In December 2012, Hill filed this suit against the individual deputies, the Sheriff, and Hinds County. His federal claims, brought under 42 U.S.C. § 1983, alleged constitutional violations, conspiracy to violate constitutional rights, and supervisory liability for constitutional

---

[2] In his response to the individual deputies' motion for summary judgment, for example, Hill never claimed that the deputies' vehicle hit his own – it was a two vehicle accident. Docket No. 50, at 3. Granted, Hill's opposition to that motion consisted primarily of his affidavit. His later deposition testimony appears to call into question the veracity of his assertions in that affidavit, a point that will surely be weighed at any trial in this matter.

[3] Two days after the accident, Deputy Wilburn was terminated while filling out the paperwork for Hill's arrest. Docket No. 53, at 5. No other deputy followed up on the case.

violations. His state claims, brought pursuant to the Mississippi Tort Claims Act, alleged negligence, gross negligence, and reckless disregard for his safety.

On February 26, 2014, a hearing was held in this Court on the individual deputies' motion for summary judgment premised upon qualified immunity. The Court granted the motion. It concluded that the deputies had not violated Hill's constitutional rights: they had probable cause to make a traffic stop and had not used excessive force against Hill.[4] Docket No. 53, at 50-51. The Court also stated that under Mississippi law, Hill's state law claims against the deputies could proceed against the County only. *Id.* at 52.

The defendants now seek summary judgment on all remaining theories of liability.[5] Docket No. 87. Hill argues that Hinds County is responsible for a custom of failing to properly train its deputies on "unlawful pursuit," "excessive use of force," and "the treatment and handling of injured suspects," and that these failures violated his constitutional rights. Docket No. 96, at 5. Regarding his state law claims, Hill contends that the County is liable for its deputies' reckless disregard for his rights and that the immunities afforded by Mississippi law are undeserved. *Id.* at 12-14.

**II.     Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made

---

[4] In its remarks, the Court mentioned that Hill possibly could have argued a Fourth Amendment claim, based on the deputies' alleged act of going into his pockets. Docket No. 53, at 50. Such a claim, however, was not advanced in the complaint (when Hill mentioned only that there was an "attempted" search at the scene), at the hearing, or in Hill's present brief opposing summary judgment. *See* Docket Nos. 1, at 6; 53; 96.
[5] Although Hill's remaining claims are brought against Hinds County, its Sheriff in his official capacity, and two deputies in their official capacities, at this point these claims merge into whether Hinds County is liable to Hill.

and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations and quotation marks omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

### III. Discussion

The Court will consider each theory defended by Hill in his brief opposing summary judgment.

#### A. Municipal Liability Under 42 U.S.C. § 1983

"[A]lthough the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). The Supreme Court has made clear that under this theory, a plaintiff may hold a municipality liable for a custom of inadequate employee training: "Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular [training] omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied. " *City of*

*Canton, Ohio v. Harris*, 489 U.S. 378, 396 (1989). In other words, a municipality's custom "of failing to train its police officers can give rise to § 1983 liability." *Brown v. Bryan Cnty., OK*, 219 F.3d 450, 457 (5th Cir. 2000).

To be actionable, the municipal custom must have resulted in a violation of the plaintiff's constitutional rights. *See Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468, 483 (5th Cir. 2014) ("As is well established, every *Monell* claim requires 'an underlying constitutional violation.'"); *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) ("It is facially evident that this test cannot be met if there is no underlying constitutional violation."); *Estate of Henson v. Callahan*, 440 F. App'x 352, 357 (5th Cir. 2011) (same).

In this case, Hill's municipal liability theory fails because his constitutional rights were not violated. This Court has already found that Deputies Wilburn and Coleman had probable cause to make a traffic stop and did not use excessive force against Hill.[6] Docket No. 53, at 50-51. The adverse resolution of Hill's constitutional claims necessarily means he cannot prove municipal liability under § 1983.

There are other, independent problems with Hill's federal claims. Nowhere in his brief does he point to evidence that Hinds County was on notice of a pattern of similar unlawful pursuit or excessive force incidents causing constitutional violations. *See Kitchen*, 759 F.3d at 484. Hill attempts to get around that by arguing that his case falls into the "single-incident" category of *Monell* liability, but his brief has failed to point to evidence explaining how "a [single] constitutional violation would result as the highly predictable consequence of a particular failure to train." *Id.* (quotation marks and citation omitted). This was the time to discuss the state of the evidence Hill had developed in discovery – even evidence with

---

[6] The Court did not have occasion to consider whether the deputies violated Hill's constitutional rights by hitting his vehicle with theirs, since when their motion was adjudicated, Hill's version of the chase did not involve such a claim.

admissibility contingent upon the resolution of other pending motions – which would "demonstrate[] that the prospect of constitutional violations should have been 'highly predictable' or 'patently obvious' in the present case." *Id.* at 485 (citations omitted).

Instead of pointing to training failures, Hill's brief discusses evidence that in the 1990s, Deputy Wilburn was disciplined by the Hinds County Sheriff's Office for insubordination, failure to follow orders, falsification of records, misuse of official records, using abusive language, failing to give proper notification for taking leave, and failing to write up confiscating a weapon from an individual. Docket No. 95-3. None of these incidents have anything to do with the harms suffered by Hill. They did not place Hinds County on notice that Deputy Wilburn needed additional training on vehicular pursuit or removal of injured persons from vehicles.

For these reasons, summary judgment is appropriate on Hill's remaining federal causes of action.

### B. Governmental Liability Under the Mississippi Tort Claims Act

With all of Hill's federal causes of action now resolved, the Court finds it appropriate to decline supplemental jurisdiction over Hill's state law claims. *See* 28 U.S.C. § 1367(c)(3).

## IV. Conclusion

The motion for summary judgment is granted as to Hill's federal claims. Hill's state law claims are dismissed without prejudice to their refiling in a state court of competent jurisdiction. A separate Final Judgment is forthcoming.

**SO ORDERED**, this the 9th day of March, 2015.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE